IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINATTI DIVISION

| | |
|---|---|
| TARA POWELL,<br><br>      Plaintiff,<br><br>-v-<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC, TRANSUNION RENTAL SCREENING SOLUTIONS, INC. and FLAGSHIP CREDIT ACCEPTANCE, LLC,<br><br>      Defendants. | Civil Case Number:<br><br><u>CIVIL ACTION</u><br><br>COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. Plaintiff, Tara Powell, brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging that Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Transunion"), Equifax Information Services, LLC ("Equifax"), TransUnion Rental Screening Solutions, Inc. ("TUURS") and Flagship Credit Acceptance, LLC ("Flagship") negligently and recklessly disseminated false information regarding the Plaintiff's credit.

2. Plaintiff further alleges that Defendants failed to follow reasonable procedures to ensure maximum accuracy of credit reports they prepared concerning Plaintiff and failed to conduct reasonable investigations in response to Plaintiff's disputes.

3. Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

-1-

## JURISDICTION

4. The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b)(2).

## PARTIES

6. Plaintiff, Tara Powell ("Plaintiff"), is a resident of the State of Ohio and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7. Defendant Experian Information Solutions, Inc. ("Experian") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

8. Experian Information Solutions, Inc. is a corporation incorporated in the State of Florida, with its principal place of business located in Costa Mesa, California.

9. Defendant Equifax Information Services, LLC ("Equifax") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

10. Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.

11. Defendant TransUnion, LLC ("Transunion") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

12. TransUnion is a limited liability company with its principal place of business at 555 W. Adams Street, Chicago, IL 60661.

13. Defendant TransUnion Rental Screening Solutions, Inc. ("TUURS") is a credit reporting agency focused on providing consumer background reports in the context of housing and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. TUURS is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

14. TUURS is a Delaware corporation with its principal place of business at 5889, South Greenwood Plaza Boulevard, Suite 201, Greenwood Village, CO 80111.

15. Flagship Credit Acceptance, LLC ("Flagship") is a national financial services company with its principal place of business at 530 W. Allegan Street, 7th Floor, Lansing, MI 48933.

**FACTUAL ALLEGATIONS**

16. This case relates to a Flagship account previously maintained by Plaintiff related to a vehicle which was repossessed on February 5, 2019.

17. In relation to this incident, Plaintiff initiated an action against Defendant Flagship relating to alleged wrongful acts and losses relating to the 2019 vehicle repossession. On or about December 24, 2020, Plaintiff and Flagship entered into a settlement agreement in which Flagship agreed to release and discharge Plaintiff for any and all obligations that remained under the loan related to the repossessed vehicle, and further agreed to delete any credit reporting tradeline of Ms. Powell or report the account as paid in full with each credit reporting agency within 30 days of execution of the agreement and to submit any follow ups as necessary to accomplish the updated reporting and deletion.

18. Despite this, sometime prior to February of 2023, Plaintiff was denied a housing application due to the results of a consumer report prepared by Defendant TUURS. Plaintiff was informed that this adverse decision was specifically due to TUURS reporting of a debt of over $9000 owed to Flagship.

19. Plaintiff then reviewed her credit reports from Experian, Equifax and Transunion and, to her dismay, discovered that each was similarly reporting the Flagship account and the outstanding balance.

20. Accordingly, on or about June 8, 2023, Plaintiff sent disputes regarding this account via certified mail to Experian, Transunion, Equifax and TUURS, asserting that the account had been discharged by Flagship and she did not owe any balance, and requesting that this information be removed.

21. Upon information and belief, Flagship was notified of Plaintiff's disputes.

22. Following receipt of Plaintiff's disputes, Experian failed to conduct a reasonable investigation, correct or remove the inaccurate Flagship account from the Plaintiff's credit file. Instead, Experian purported to have verified this information as accurate and as a result, that information is still being reported to this day.

23. Upon information and belief, Experian had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

24. Similarly, TransUnion refused to investigate, correct or remove the Flagship Account from the Plaintiff's credit file. Instead, that information is still being reported to this day.

25. Upon information and belief, TransUnion had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

26. Equifax also refused to investigate, correct or remove the fraudulent Flaghsip account from the Plaintiff's credit file. Instead, that information is still being reported to this day.

27. Upon information and belief, Equifax had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

28. TUURS also refused to investigate, correct or remove the fraudulent Flagship account from the Plaintiff's credit file. Instead, that information is still being reported to this day.

29. Upon information and belief, TUURS had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

30. Experian, Equifax, Transunion, TUUURS and Flagship were each notified of the respective disputes but refused to investigate and/or remove inaccurate reporting.

31. At all times pertinent hereto, Defendants' violations of the FCRA were willful, and carried out in reckless disregard for consumer's rights as set forth under section 1681s, 1681i and 1681b of the FCRA. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages

under 15 U.S.C. § 1681n.

32. Additionally, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

33. In any event, Defendants are liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

34. As a direct and proximate result of the Defendants' willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed in her daily life, by the impact that this derogatory information has had on her credit score and the defamatory harm that Plaintiff has suffered as a result of having this fraudulent, negative information attributed to her and disseminated to creditors. For example, Plaintiff has been denied housing and credit due to these derogatory inaccuracies.

35. Defendants' violations of the FCRA further caused the Plaintiff great distress, anger, annoyance and frustration in his daily life, and subjected the Plaintiff to abusive credit reporting practices from which Plaintiff had a substantive right to be free.

## COUNT I
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST EQUIFAX

36. All preceding paragraphs are realleged.

37. At all times pertinent hereto, Experian was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

38. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

39. On multiple occasions, including on or about June 8, 2023, the Plaintiff initiated disputes with Experian requesting that they correct specific items in his credit file that were patently inaccurate and damaging to her, namely the damaging Flagship account.

40. Upon information and belief, Experian received Plaintiff's previous disputes.

41. Experian, having either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate and outdated account on the Plaintiff's credit file, something that any basic investigation would have prevented.

42. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff have been harmed, as explained above.

**COUNT II**
**FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY**
**15 U.S.C. § 1681e(b)**
**AGAINST EXPERIAN**

43. All preceding paragraphs are realleged.

44. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

45. Were Experian to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed or corrected the inaccurate Flagship account information being reported on the Plaintiff's credit report, especially where a basic investigation of the Plaintiff's dispute would have corroborated Plaintiff's dispute.

46. As a direct and proximate result of Experian's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed, as explained above.

**COUNT III**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**AGAINST EQUIFAX**

47. All preceding paragraphs are realleged.

48. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

49. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

50. On multiple occasions, including on or about June 8, 2023, the Plaintiff initiated disputes with Equifax requesting that they correct specific items in his credit file that were patently inaccurate and damaging to her, namely the damaging Flagship account.

51. Upon information and belief, Equifax received Plaintiff's previous disputes.

52. Equifax, having either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate and outdated account on the Plaintiff's credit file, something that any basic investigation would have prevented.

53. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff have been harmed, as explained above.

## COUNT IV
## FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY
## 15 U.S.C. § 1681e(b)
## AGAINST EQUIFAX

54. All preceding paragraphs are realleged.

55. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

56. Were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed or corrected the inaccurate Flagship account information being reported on the Plaintiff's credit report, especially where a basic investigation of the Plaintiff's dispute would have corroborated Plaintiff's dispute.

57. As a direct and proximate result of Equifax's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed, as explained above.

## COUNT V
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST TRANSUNION

58. All preceding paragraphs are realleged.

59. At all times pertinent hereto, Transunion was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

60. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

61. On multiple occasions, including on or about June 8, 2023, the Plaintiff initiated disputes with Transunion requesting that they correct specific items in his credit file that were patently inaccurate and damaging to her, namely the damaging Flagship account.

62. Upon information and belief, Transunion received Plaintiff's previous disputes.

63. Transunion, having either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate and outdated account on the Plaintiff's credit file, something that any basic investigation would have prevented.

64. As a direct and proximate result of Transunion's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff have been harmed, as explained above.

## COUNT VI
## FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY
## 15 U.S.C. § 1681e(b)
## AGAINST TRANSUNION

65. All preceding paragraphs are realleged.

66. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

67. Were Transunion to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed or corrected the inaccurate Flagship account information being reported on the Plaintiff's credit report, especially where a basic investigation of the Plaintiff's dispute would have corroborated Plaintiff's dispute.

68. As a direct and proximate result of Transunion's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed, as explained above.

**COUNT VII**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**AGAINST TUURS**

69. All preceding paragraphs are realleged.

70. At all times pertinent hereto, TUURS was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

71. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

72. On multiple occasions, including on or about June 8, 2023, the Plaintiff initiated disputes with TUURS requesting that they correct specific items in his credit file that were patently inaccurate and damaging to her, namely the damaging Flagship account.

73. Upon information and belief, TUURS received Plaintiff's previous disputes.

74. TUURS, having either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate and outdated account on the Plaintiff's credit file, something that any basic investigation would have prevented.

75. As a direct and proximate result of TUURS's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff have been harmed, as explained above.

## COUNT VIII
### FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY
### 15 U.S.C. § 1681e(b)
### AGAINST TUURS

76. All preceding paragraphs are realleged.

77. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

78. Were TUURS to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed or corrected the inaccurate Flagship account information being reported on the Plaintiff's credit report, especially where a basic investigation of the Plaintiff's dispute would have corroborated Plaintiff's dispute.

79. As a direct and proximate result of TUURS's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed, as explained above.

## COUNT XIII
### FAILURE TO INVESTIGATE DISPUTE
### FCRA, 15 USC § 1681s-2(b)
### AGAINST FLAGSHIP

80. All preceding paragraphs are re-alleged.

81. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

82. On or about June 8, 2023, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the account being reported by FLAGSHIP.

83. Upon information and belief, FLAGSHIP received notice of these disputes from the credit bureaus.

84. FLAGSHIP was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

85. Even after the Plaintiff properly disputed this account with the credit reporting agencies, FLAGSHIP refused to conduct a reasonable investigation and continued inaccurately reporting the fraudulent account on Plaintiff's credit report.

86. FLAGSHIP's conduct violated section 1681s-2(b) of the FCRA.

87. As a result of FLAGSHIP's conduct, Plaintiff was harmed, as discussed above.

## DEMAND FOR TRIAL BY JURY

88. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demand judgment against Defendant as follows:

A. Awarding Plaintiff actual damages;

B. Awarding Plaintiff statutory damages;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff the costs of this action and reasonable attorneys' fees and expenses;

E. Awarding pre-judgment interest and post-judgment interest;

F. A declaration that Defendants' conduct alleged herein is unlawful, as set forth more fully above;

G. Equitable relief, enjoining Defendants from engaging in the unjust and unlawful conduct alleged herein; and

H. Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: September 7, 2023

        By: /s/ Jonathan L. Hilton
           Jonathan L. Hilton, Esq.
           Hilton Parker LLC
           7544 State Ridge Blvd.
           Reynoldsburg, OH 43068
           Tel: (614) 992-2277
           Email: jhilton@hiltonparker.com
           *Attorney for Plaintiff*

           /s/ Yitzchak Zelman
           Yitzchak Zelman, Esq.
           MARCUS & ZELMAN, LLC
           701 Cookman Avenue, Suite 300
           Asbury Park, New Jersey 07712
           (732) 695-3282 telephone
           (732) 298-6256 facsimile
           PRO HAC VICE Motion Forthcoming
           *Attorney for Plaintiff*